```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF ALABAMA
                       SOUTHERN DIVISION


NOAH J. LEE,                          :
                                      :
     Plaintiff,                       :
                                      :
vs.                                   :
                                      :     CIVIL ACTION 15-0177-M
CAROLYN W. COLVIN,                    :
Social Security Commissioner,         :
                                      :
     Defendant.                       :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 11).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 15).  Oral argument was heard on November 23, 2015.  After considering the administrative record, the memoranda of the parties, and oral argument, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Lee was twenty-nine years old, had completed a high school equivalency education (see Tr. 24; Doc. 11 Fact Sheet), and had previous work experience as a dishwasher, a roustabout, and a construction worker (Tr. 65, 76).  Plaintiff alleges disability due to Bipolar Disorder, Schizoaffective Disorder, Major Depressive Disorder with Psychotic Features, Chronic Cannabis Abuse, and Chronic Poly-Substance Dependence (Doc. 11 Fact Sheet).

The Plaintiff protectively applied for disability insurance benefits on September 27, 2012, asserting a disability onset date of December 1, 2011 (Tr. 20, 181-82).  An Administrative Law Judge (ALJ) denied benefits after determining that Lee met disability Listing requirements for Affective Disorders and Substance Addiction Disorders; the ALJ further found that if Plaintiff discontinued his drug use, he would be capable of working at specified jobs (Tr. 20-40).  Plaintiff requested

review of the hearing decision (Tr. 7-9), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Lee alleges that:  (1) The ALJ did not properly consider the opinions and diagnoses of his treating physicians; (2) the evidence does not support the ALJ's residual functional capacity (hereinafter *RFC*) finding; and (3) the ALJ did not properly develop the record (Doc. 11).  Defendant has responded to—and denies—these claims (Doc. 12).  The relevant evidence of record follows.

On August 22, 2011, Plaintiff went to West Florida Hospital with "the shakes," stating that he wanted to stop using drugs; his drug screen was positive for cannabinoids, benzodiazepines, and opiates (Tr. 475-93).  He was discharged the next day.

On August 26, Plaintiff went to Lakeview Center, saying that he was suicidal after taking himself off of methadone; he had mood swings, was depressed, anxious, paranoid, and exhibiting obsessive behavior (having to touch everything with his finger) (Tr. 511-15).  The Examiner noted Lee was oriented in four spheres, was of average intelligence, and had fair judgment.

3

On February 2, 2012, Plaintiff was seen at Tri County Medical Center for chronic, mild lumbar back pain, radiating occasionally to the neck; the Doctor noted scoliosis, by history, and anxiety and prescribed Tramadol[1] and Xanax[2] (Tr. 349-50).

On April 2, Lee was admitted, for one night, to Atmore Community Hospital for a drug overdose; he tested positive for benzodiazepines, methamphetamines, amphetamines, and cannabinoids (Tr. 307-21). Plaintiff was noted to have a history of bipolar disorder, paranoid schizophrenia, and social anxiety.

On April 5, Lee went to Southwest Alabama Behavioral Health Care for individual therapy; he was anxious, delusional, sad, and suicidal with homicidal thoughts (Tr. 333-37, 343; *see generally* Tr. 324-43). Plaintiff had five more sessions through August 31, 2012 during which he voiced paranoia, anger, and thoughts of hurting someone; he was depressed and smoked marijuana to calm his nerves (Tr. 338-42).

On May 1, Plaintiff was seen at Tri County to get his

---

[1] *Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." **Error! Main Document Only.***Physician's Desk Reference* 2520 (66th ed. 2012).

[2] **Error! Main Document Only.***Xanax* is a class four narcotic used for the management of anxiety disorders. *Physician's Desk Reference* 2294 (52nd ed. 1998).

4

prescriptions refilled and for anxiety and abnormal weight loss (Tr. 347-48). On September 4, 2012, Lee had normal range of motion (hereinafter *ROM*), with no noted joint tenderness or swelling; in addition to refilling his Xanax, the Doctor prescribed Flexeril,[3] an NSAID, and an antidepressant (Tr. 345-46).

On September 12, Lee was admitted to Baptist Hospital for six nights for depression and an overdose of multiple medications requiring intubation; he reported being anxious, paranoid, and having auditory hallucinations (Tr. 352-93). Plaintiff "was feeling up and down when he did not take his medications" (Tr. 353). A drug screen was positive for cannabinoids and benzodiazepines. At discharge, Lee was in no acute distress, had no formal thought disorder, and denied being suicidal, homicidal, or hopeless; he was prescribed an antidepressant and encouraged to follow-up with psychiatric protocols.

On September 19, Plaintiff went to Atmore Community Hospital Emergency Room after having what was thought to be a seizure as a reaction to one of his medications (Tr. 397-412, 621-29). He was given an antihistamine, monitored, and

---

[3]**Error! Main Document Only.***Flexeril* is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

5

released.

On October 3, 2012, Lee went to Lakeview Center and was evaluated for his thoughts of committing suicide and homicide that was found to be low risk (Tr. 414-16, 633).

On October 23, psychiatric advanced registered nurse practitioner (hereinafter *ARNP*) Cheryl Pawloski examined Plaintiff, finding him irritable and having psychomotor agitation; he became angry when she indicated that he needed to quit taking the Xanax and threatened to find another provider (Tr. 417-19, 634-35).  On November 2, Dr. Heather Rohrer examined Lee and prescribed Mobic,[4] Valium,[5] and Zyprexa[6] (Tr. 423-24, 636-37).  On December 18, Plaintiff reported taking only his prescribed medications; the ARNP reported that he was alert, fully oriented, and that his thought process was goal-directed (Tr. 425-26, 638-39).  On January 21, 2013, Dr. Cynthia Javellana reported that Lee was being admitted, from an Emergency Room through the Baker Act, to Lakeview Center after indicating that "he was very depressed, stressed out, and was having thoughts of suicide" (Tr. 436, 499-502; *see generally* Tr.

---

[4]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[5]**Error! Main Document Only.***Diazepam*, better known as Valium, is a class IV narcotic is used for treatment of anxiety.  *Physician's Desk Reference* 2765-66 (62nd ed. 2008).

[6]**Error! Main Document Only.***Zyprexa* is used for the "management of the manifestations of psychotic disorders."  *Physician's Desk Reference* 1512 (52nd ed. 1998).

436-38). Plaintiff admitted to taking drugs and drinking the previous weekend. Two days later, Lee admitted feeling better and thinking better; he was discharged, with adequate insight and judgment, with a prescription for BuSpar[7] (Tr. 439-40). On January 29, 2013, Pawloski noted he was oriented in four spheres and was goal-directed; he had fair insight and judgment generally, but it was "very limited around his substance use and the seriousness of his mental illness" (Tr. 441; *see generally* Tr. 441-42). Vistaril[8] was prescribed. On February 26, Plaintiff reported feeling anxious but that he was not using any substances (Tr. 443-44).

On March 27, Lee went to the Atmore Community Hospital following a suicide attempt, his third, by taking twelve Zyprexa, twelve anti-depressants, a half bottle of Nyquil, and six Restoril[9] (Tr. 597-606). His drug screen was positive for benzodiazepines, cocaine, and PCP. Plaintiff checked out of the hospital the next day against medical advice.

On March 29, Lee returned to Lakeview Center complaining of depression, auditory hallucinations, and feeling worthless, hopeless, helpless, and suicidal; he had smoked Marijuana and

---

[7] *BuSpar* is used to treat anxiety and irritability. *See* http://www.drugs.com/buspar.html

[8] *Vistaril* is used to treat anxiety and tension and may be used to control nausea and vomiting. http://www.drugs.com/vistaril.html

[9] **Error! Main Document Only.** *Restoril* is used for the short-term treatment of insomnia. *Physician's Desk Reference* 1894-96 (52nd ed. 1998).

7

Spice the night before (Tr. 432-35, 640-644).  The Examiner noted that Plaintiff had depressed mood and affect, poor judgment and insight, and fair attention and concentration.  Thought content was depressed, angry, paranoid, and anxious while his thought process was delusional and circumstantial with auditory hallucinations.  The next day, he was oriented in four spheres with limited insight and judgment; Lee expressed hatred toward random people, voicing ways of hurting them (Tr. 445-49, 645-46).  Seroquel[10] was substituted for the Zyprexa.  On April 4, Plaintiff was oriented in three spheres, but felt anxious and depressed, but not suicidal or homicidal; insight and judgment continued to be limited (Tr. 450-51).  He was discharged with a prescription for Thorazine[11] and was to follow up with psychiatric treatment.

On June 10, Plaintiff was admitted to West Florida Hospital for three nights after being off of his medications for two months; a drug screen was positive for cannabinoids and benzodiazepines (Tr. 521-53).  At admission, Lee admitted being depressed and sad; Plaintiff began taking his medications while hospitalized and his depression, anxiety, and sleep improved.

---

[10] *Seroquel* is used in the treatment of schizophrenia.  **Error! Main Document Only.** *Physician's Desk Reference* 670-72 (62nd ed. 2008).

[11] *Thorazine* is an antipsychotic medication used to treat mood disorders, the manic phase of manic-depressive disorder, and anxiety. *See* http://www.drugs.com/cdi/thorazine.html

8

Discharge medications were BuSpar, Celexa,[12] and Thorazine.

On June 14, 2013, the day after being discharged, Lee returned to the Emergency Room at West Florida Hospital and was admitted to the Hospital for depression, suicidal ideation, and auditory hallucinations; he reported that he had not filled his prescriptions, so had not been taking them, after his previous discharge (Tr. 554-96).  Plaintiff was discharged after three days in the hospital in improved condition.

On July 16, Lee reported to ARNP Pawloski that he was sad, depressed, irritable, and anxious; he reported that he was not smoking Marijuana and that that had helped (Tr. 452-53, 647-48). Plaintiff also reported that he was "so much better on his medications" (Tr. 452).  He was oriented in four spheres with fair insight and judgment.  Depakote[13] was added to Lee's medical regimen; therapy was encouraged.  On August 27, Plaintiff stated that his medications seemed to be helping him sleep; he was somewhat sleepy and was not clear of thought (Tr. 630-32). Judgment was good and judgment was fully intact.

On September 6, Plaintiff went to Atmore Community Hospital ER to be treated for priapism (Tr. 608-20).  He was transferred to Mobile Infirmary where he reported that he did not drink

---

[12]*Celexa* is used in treating depression. **Error! Main Document Only.***Physician's Desk Reference* 1161-66 (62nd ed. 2008).

[13]**Error! Main Document Only.***Depakote* is used for the treatment of seizures.  *Physician's Desk Reference* 428-34 (52nd ed. 1998).

9

alcohol or use illicit drugs; he was treated with corporal irrigation and an injection with a decongestant (Tr. 649-55).

This concludes the Court's review of the evidence.

In bringing this action, Lee first asserts that the ALJ did not properly consider the opinions and diagnoses of his treating physicians. Plaintiff references Drs. Messina, Javellana, and Narahari (Doc. 11, pp. 4-5). It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[14] *see also* 20 C.F.R. § 404.1527 (2013).

The ALJ faithfully reviewed the evidence of record, including that of the physicians on which Lee brings this claim. After doing so, the ALJ made the following findings with regard to the conclusions of those medical sources:

> As for the opinion evidence, the undersigned has assigned some evidentiary weight to information contained in the hospital records and reports and in the mental health treatment records regarding the claimant's psychiatric impairments and his ongoing polysubstance abuse. Some evidentiary weight has been assigned to Dr.

---

[14]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

10

>  Javellana's and Dr. Narahari's descriptions
>  of the claimant's major depressive disorder
>  as "moderate" as stated in the Lakeview
>  Center treatment records (Exhibit 10F).
>  There are no other treating or examining
>  medical source opinions regarding the nature
>  and severity of the claimant's diagnosed
>  mental impairments.

(Tr. 32).

Plaintiff has asserted that the evidence does not support the ALJ's RFC finding.[15]  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546 (2015).  That decision cannot be based on "sit and squirm" jurisprudence.  *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).  However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

In his decision, the ALJ found that Plaintiff's impairments met the requirements of Listings 12.04 and 12.09 for Affective Disorders and Substance Addiction Disorders, respectively (Tr. 30).  However, the ALJ went on to find that if Lee stopped his substance abuse, he would not still have an impairment or combination of impairments that would meet these Listing

---

[15]The Court acknowledges that it has not yet discussed the substance of Lee's claim regarding the opinions and conclusions of his treating physicians.  However, Plaintiff's first claim was subsumed in this second claim and the Court chooses to address them together.

11

requirements (Tr. 33).  Then the ALJ fashioned an RFC that set out Lee's capabilities, finding him capable of performing specific jobs (Tr. 35-39).

In bringing his first two claims, Plaintiff seemingly forgets that the medical record consists, almost exclusively, of his multiple substance abuse problems.  During those rare periods of sobriety when Plaintiff following his prescribed medication regimen, Lee acknowledged he was doing much better (*see* Tr. 443, 452, 638).  Those periods, however, were short-lived and are only barely reflected in the record.  While treating physicians indicated debilitating mental impairments, those diagnoses were given while Plaintiff was abusing alcohol and drugs and failing to follow their advice.  As noted by the ALJ, "[t]here have been no credible medical opinions in the record which indicate that the claimant has been disabled from all work or even has had limitations more stringent than those determined in this decision, absent drug abuse" (Tr. 36).  This finding remains unrefuted.[16]  Plaintiff is reminded that he "bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination."

---

[16]The Court notes Lee's concern that the ALJ did not state the weight given various Doctor's GAF scores (Doc. 11, p. 5).  GAF scores have no "direct correlation to the severity requirements of the mental disorders listing."  *See* 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000). The scores are even less reliable in light of Lee's self-abuse.  The Court further fails to understand Plaintiff's concern that there is no "opinion from a non-examining reviewing physician" (Doc. 11, p. 5).

*Doughty v Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001). Lee's claims are without merit.

Plaintiff next claims that the ALJ did not properly develop the record. More specifically, Lee argues that the ALJ should have ordered a consultative psychological examination (Doc. 11). The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty,* 245 F.3d at 1281).

The Court notes finds no merit in this claim. The more-than-three-hundred-pages of medical evidence in this record consists, almost exclusively, of medical personnel in the mental health arena counseling Plaintiff to quit taking drugs, quit drinking, take the medications prescribed, and follow through with the various therapies available to help him with his psychological/psychiatric problems. Adding another voice to the choir would be of no benefit under these circumstances.

Plaintiff has raised three different claims in bringing this action. All are without merit. Upon consideration of the

13

entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 23rd day of November, 2015.

s/BERT W. MILLING, JR.<br>
UNITED STATES MAGISTRATE JUDGE